In re BANCO LATINO
INTERNATIONAL,
Debtor.

Banco Latino International,
Appellant/Cross–
Appellee/Debtor,

v.

Gustavo A. Gomez–Lopez, Maria Teresa
Pulgar, Giacomo Leon, and Pedro Gil-
ly,   Appellees/Cross–Appellants/Credi-
tors.

No. 03–22180–CIV.

United States District Court,
S.D. Florida.

May 19, 2004.

David Rand Softness, Joseph W. Hatchett of Akerman Senterfitt, Rodolfo Pittaluga, Jr. of Holland and Knight, Mindy A. Mora and Michael C. Foster of Bilzin, Sumberg, Baena, Price and Axelrod, Jay Alexander and Ryan E. Bull of Baker Botts, for Plaintiff or Petitioner.

Andrew R. Herron, Peter W. Homer, Homer, Bonner and Delgado, Brian Stephen Keif, Wicker Smith O'Hara McCoy, George L. Combaluzier, for Defendant or Respondent.

### ORDER REVERSING BANKRUPTCY JUDGE

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon the Debtor's Notice of Appeal, filed on

August 14, 2003; Debtor's Notice of Cross Appeal, filed on August 14, 2003; Creditor Gustavo A. Gomez–Lopez's Notice of Cross Appeal, filed on August 14, 2004.

THE COURT has considered the notices, the pertinent portions of the record, and is otherwise fully advised in the premises. On August 14, 2003, Debtor Banco Latino International ("Debtor") appealed an Order Granting In Part Motions For Allowance and Payment of Indemnification Claims ("Indemnification Order"), entered by the Honorable A. Jay Cristol, United States Bankruptcy Judge, on January 23, 2003, *see* Debtor's Notice of Appeal, as well as an Order Determining Amount of Allowed Indemnification Claim of Gustavo A. Gomez–Lopez ("Amount Order"), entered by the same Judge on the same day. *See* Debtor's Notice of Cross Appeal. Also on August 14, 2003, Creditor Gustavo A. Gomez–Lopez appealed both the Indemnification Order[1] and the Amount Order. *See* Creditor Gustavo A. Gomez–Lopez's Notice of Cross Appeal.

## STATEMENT OF FACTS[2]

The Debtor in this case is an Edge Act Bank operating in the State of Florida.[3] *See* Indemnification Order at 2–3; Principal Brief of Appellee/Cross Appellant Gustavo Gomez Lopez ("Cr.Br.") at 4. After the banking crisis in Venezuela which occurred in late 1993, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 19, 1994.

*See* Initial Brief of Appellant ("Debt.Br.") at 3; Cr. Br. at 4–5; Indemnification Order at 3. At the time of its bankruptcy filing, the Debtor was owned 76.3% by BLCA, a Venezuelan bank, and 23.7% by Banco Latino, N.V., a Netherlands Antilles bank. *See* Indemnification Order at 3. On June 30, 1994, the Creditors Committee filed an Amended and Restated Disclosure Statement and Amended and Restated Plan of Liquidation, which was thereafter amended and modified ("Plan"), and the claims bar date, namely "the last date for creditors and equity security holders to file proofs of Claims or interests in the Chapter 11 Case," was set at August 9, 1994. *See* Indemnification Order at 3; Debt. Br. at 3–4; *id.* at App. 1, at 3; Cr. Br. at 5. On November 29, 1994, the bankruptcy court entered an order confirming the plan. *See* Indemnification Order at 3; Debt. Br. at 4; Cr. Br. at 5.

The plan provided for the collection of all assets of the Debtor's estate and a prompt distribution to creditors in accordance with the priorities mandated by the Bankruptcy Code. *See* Indemnification Order at 3. To the extent funds were available, the plan provided first for payment to general unsecured claims up to the full amount of such claims plus post-petition interest (Class 3), then to "Subordinated Claims"[4] up to the full amount of such claims plus post-petition interest (Class 5), and then finally to the shareholders, to the

---

1. Creditors Maria Teresa Pulgar, Giacomo Leon and Pedro Gully joined in Creditor Gustavo A. Gomez–Lopez's appeal. As such, Gustavo A. Gomez–Lopez, Maria Teresa Pulgar, Giacomo Leon and Pedro Gully will be referred to as the "Creditors."

2. This statement of facts is derived from the parties' briefs and the documentation filed in conjunction therewith, and from the Indemnification Order.

3. Under U.S. law, Edge Act banks are only allowed to accept deposits from foreign nationals, and the deposits are not insured by the FDIC. *See* Indemnification Order at 3; Cr. Br. at 4.

4. "Subordinated Claims" consisted of "Allowed Claims which are subordinated, in priority of distribution, to claims of other creditors." Indemnification Order at 4, Cr. Br. at 5.

extent that shareholders retained their equity interests (Class 6). *See id.* at 3–4.

In June 1995, the Debtor commenced a lawsuit against the Creditors in the United States District Court for the Southern District of Florida, asserting a variety of claims stemming from alleged fraudulent and otherwise wrongful conduct undertaken by the Creditors who were pre-petition officers and/or directors of the Debtor. *See* Indemnification Order at 5; Debt. Br. at 5. Among other claims, the Debtor alleged breaches of the duties of care and loyalty prescribed by Chapter 607 of the Florida Statutes, as well as claims under civil RICO, 18 U.S.C. §§ 1962, 1964. *See id.;* Cr. Br. at 7. On April 20, 2000, the district court granted the Creditors' summary judgment motion, and entered a final judgment against the Debtor on April 27, 2000. *See* Indemnification Order at 5; Debt. Br. at 5; Cr. Br. at 7. The court found the Debtor's claims against the Creditors without merit and imposed sanctions pursuant to Fed.R.Civ.P. 11. *See* Indemnification Order at 5; Debt. Br. at 5; Cr. Br. at 7–8.

Section 7.6 of the Debtor's pre-petition corporate by-laws provided for the indemnification of the costs and expenses, including attorney's fees, incurred by officers and directors in defense of a lawsuit alleging wrongful conduct undertaken as an officer or director. *See* Indemnification Order at 5. Based on the foregoing by-law provision and applicable Florida law, in June 2000—over five years after the bar date—the Creditors filed motions in the bankruptcy court, seeking to recover from Debtor all of the attorney's fees and costs that the Creditors incurred in defending the district court suit and in pursuing the Rule 11 sanctions. *See* Indemnification Order at 6; Debt. Br. at 5. The Debtor argued that the Creditors' indemnification claims could not be paid because they were untimely. *See* Indemnification Order at 12. In response, the Creditors argued that, although the claims were untimely, they "should be deemed timely filed because [the Creditors] filed them with the Court promptly after the Debtor's claims against the [... Creditors] were adjudicated." *See id.* The bankruptcy court disagreed with the Creditors and stated:

> The [...Creditors] knew or should have known that they had contingent claims for indemnification upon the June 30, 1994 filing of the Chapter 11 plan which stated Debtor's intention to sue the [... Creditors....] They could have filed a claim at that time, albeit a contingent one, prior to the August 9 bar date. Instead, [... they] chose not to file their claims at that time. The claims having thus arisen prior to the claims bar date, but not having been filed until some five or six years thereafter, the Court cannot deem them to be timely.

*Id.* at 12–13. The Court went on to consider the Creditors' second argument, namely that the claims should "be allowed and paid as late-filed claims pursuant to 11 U.S.C. § 726(a)(3)." [5] *Id.* at 12. The bankruptcy court found that 11 U.S.C. § 726 did not apply to Chapter 11 case, as "11 U.S.C. § 103(b) so clearly states that it does not." *Id.* at 13. Nevertheless, relying on "the equitable principles underlying the liquidation analysis and distribution scheme of 11 U.S.C. § 726," and on *In re San Joaquin Estates, Inc.,* 64 B.R. 534 (9th Cir. BAP 1986) and *In re Gaines,* 178 B.R. 101 (Bankr.W.D.Va.1995), the bank-

---

**5.** Pursuant to section 726(a)(3) of the Bankruptcy Code, after payment of priority and timely filed claims, property of a bankruptcy estate is distributed "third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title...." 11 U.S.C. § 726.

ruptcy court allowed the Creditors to file their claims. *Id.*

## STANDARD OF REVIEW

When a district court reviews factual findings made by a bankruptcy court, those findings must be upheld unless they are found to be clearly erroneous. *In re Downtown Properties, Inc.*, 794 F.2d 647 (11th Cir.1986). Equitable determinations that are made by the bankruptcy court are subject to an abuse of discretion standard. *Id.* Legal conclusions and the legal significance accorded to facts are reviewed *de novo. In re Owen,* 86 B.R. 691 (M.D.Fla.1988).

## LEGAL ANALYSIS

The initial question this Court must answer in these appeals is whether the bankruptcy court abused its discretion when allowing the Creditors' claims to be filed beyond the bar date. For the reasons stated below, the undersigned answers the question in the affirmative.

"The seminal case on the issue of the allowability [sic] of a late-filed claim is *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)." [6] *In re Premier Membership Services LLC,* 276 B.R. 706, 708 (Bankr.S.D.Fla.2002). In *Pioneer,* the Su-

preme Court explained that "Rule 3003(c) of the Federal Rules of Bankruptcy Procedure sets out the requirements for filing proofs of claim in ... Chapter 11 Reorganization cases," [7] *Pioneer,* 507 U.S. at 382, 113 S.Ct. 1489, and explicitly held that "Rule 9006(b)(1) must be construed to govern the permissibility of late filings in Chapter 11 bankruptcies." *Id.* at 389, n. 4, 113 S.Ct. 1489. Bankruptcy Rule 9006(b) "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline was the result of excusable neglect." *Id.* at 382, 113 S.Ct. 1489. (internal quotation marks omitted). Specifically, the rule provides:

(b) Enlargement.

*(1) In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) *on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.*

---

6. The Creditors' argument that this issue is raised for the first time on appeal and, therefore should not be considered, *see* Cr. Br. at 13–14, is meritless. *See* Debt. Br. at App. 9.

7. Bankruptcy Rule 3003(c), in relevant part, provides:

    (c) Filing Proof of Claim.
    (1) *Who May File.* Any creditor or indenture trustee may file a proof of claim within the time prescribed by subdivision (c)(3) of this rule.
    (2) *Who Must File.* Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed,

contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.
    (3) *Time for Filing.* The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), and (c)(4).

Fed. R. Bankr.P. 9006(b)(1) (emphasis added). The Court in *Pioneer* established a two-step test for determining "excusable neglect" under Rule 9006. First, the movant must show that its actions constituted "neglect." Neglect can be established either by (1) circumstances beyond the movant's reasonable control; or (2) the movant's inadvertence, mistake or carelessness. *Pioneer*, 507 U.S. at 387–394, 113 S.Ct. 1489. If neglect is shown, then the movant must prove that the neglect was "excusable." This entails a balancing test which may include the following factors: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (5) whether the movant acted in good faith. *Id.* at 395, 113 S.Ct. 1489. These factors are nonexclusive; the test requires an equitable determination "taking account of all relevant circumstances surrounding the party's omission." *Id.*

██ However, the law since the *Pioneer* decision has been well established that "'where a party's actions are deliberate, the party's late filing cannot constitute 'excusable neglect.'" *In re Celotex Corp.*, 232 B.R. 493, 495 (M.D.Fla.1999) (quoting *Agribank v. Green*, 188 B.R. 982, 988 (C.D.Ill.1995) and citing *In re Enstar Group, Inc.*, 215 B.R. 235, 237 (Bankr. M.D.Ala.1996); *In re Montaldo Corp.*, 209 B.R. 40, 48 (Bankr.M.D.N.C.1997); *In re LAN Assoc. XIV, L.P.*, 193 B.R. 730, 737 (Bankr.D.N.J.1996); *In re Bicoastal Corp.*, 176 B.R. 966, 971 (Bankr.M.D.Fla.1994)); *see also, e.g., In re Dauer*, 165 B.R. 146, 149 (Bankr.D.N.J.1994) ("It follows that having made a deliberate decision not to file a timely proof of claim in this case, New Pal's untimely claim must be disal-

lowed."); *In re Mahoney Hawkes, LLP*, 272 B.R. 19, 20 (1st Cir. BAP 2002) (affirming bankruptcy court's order denying motion to allow late-filed claim as timely because the "tardiness was borne of calculation rather than neglect.").

In this case, the bankruptcy court found that the Creditors "could have filed a claim ..., albeit a contingent one, prior to the August 9 bar date. Instead, [... they] chose not to file their claims at that time."[8] Indemnification Order at 12–13. As such, the Creditors' actions were not the result of excusable neglect, and the late filing of the claims should not have been allowed. *See Pioneer*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *In re Celotex Corp.*, 232 B.R. 493 (M.D.Fla. 1999).

In its Indemnification Order, the bankruptcy court relied on *In re San Joaquin Estates, Inc.*, 64 B.R. 534 (9th Cir. BAP 1986) and *In re Gaines*, 178 B.R. 101 (Bankr.W.D.Va.1995) in allowing the Creditors to file their claims five years after the bar date. *See* Indemnification Order at 13–17. However, these cases are inapposite because the creditors in *San Joaquin* and *Gaines* were seeking the allowance of interest on *timely filed claims*. As a result, the *Gaines* and *San Joaquin* courts were not facing—and therefore never addressed—the issue presented by *Pioneer*, namely whether to allow late claims to be filed. *See Gaines*, 178 B.R. at 102; *San Joaquin*, 64 B.R. at 535.

██ The bankruptcy court also relied on 11 U.S.C. § 726 to allow Creditors' late filed claims. *See* Indemnification Order at 13–17. However, as the bankruptcy court itself conceded, 11 U.S.C. § 726 is inapplicable to Chapter 11 proceedings. *See id.* at 13; *see also* 11 U.S.C. § 103(b). Furthermore, to the extent the bankruptcy

---

**8.** The Creditors have not challenged this finding on appeal.

court relied on the policies underlying 11 U.S.C. § 726 to justify its finding, the court disregarded the policies supporting the application of the "excusable neglect" standard of Fed. R. Bankr.P. 9006(b)(1) before deviating from the bar date. As the court in *Agribank v. Green,* 188 B.R. 982 (C.D.Ill.1995) explained:

> Agribank argues that equitable principles support a finding of excusable neglect in this case because the Bankruptcy Code rests on a foundation of equity. *In re Stavriotis,* 977 F.2d 1202, 1205 (7th Cir.1992). However, it is also true that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988); *In re Longardner & Assocs., Inc.,* 855 F.2d 455, 462 (7th Cir.1988), *cert. denied,* 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989). A chief purpose of the bankruptcy laws is to secure a prompt and effectual administration and settlement of the debtor's estate within a limited period. *In re Best Prods. Co., Inc.,* 140 B.R. 353, 356 (Bankr.S.D.N.Y.1992). The bar order in a Chapter 11 case serves the important purpose of enabling the parties in interest to ascertain with reasonable promptness the identity of those making claims against the estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization. *Id.* Thus, equity cannot allow the deliberate flouting of the bar date by a creditor.... Any other result would encourage claimants to willfully ignore the provisions of Rule 3003(c)(2) and to rely upon the flexibility of the excusable neglect provision to allow untimely filing of claims despite clearly established bar dates set by the bankruptcy court. The Court believes that Congress did not draft the excusable neglect provision of Rule 9006 with any such intention.

*Id.* at 990–991. *See also In re SC Corp.,* 265 B.R. 660, 662 (Bankr.D.Conn.2001) (describing the "strong policy in favor of the integrity of claim bar dates" and stating that they do " 'not function merely as a procedural gauntlet, but as an integral part of the reorganization process.' ") (quoting *In re Hooker Investments, Inc.,* 937 F.2d 833, 840 (2d Cir.1991)).[9]

Accordingly, it is hereby

ORDERED AND ADJUDGED that is the bankruptcy court's Order Granting In Part Motions For Allowance and Payment of Indemnification Claims is REVERSED.[10]

---

**9.** The Creditors argue that "various courts have held that the bar date in the bankruptcy rules cannot bar the filing of claims or the allowance of them," relying in *In re Waindel,* 65 F.3d 1307 (5th Cir.1995) and *In re Vecchio,* 20 F.3d 555 (2d Cir.1994). These cases are inapposite. *Waindel* (a Chapter 13 case), and *Vecchio* (a Chapter 7 case), discussed the application of Rule 3002, the claims-processing rule that applies to Chapter 7 and 13 cases. *Compare* Fed. R. Bankr.P. 3002 (Chapter 7, 12 and 13 cases) *with* Fed. R. Bankr.P. 3003 ("This rule applies in chapter 9 and 11 cases.").

**10.** As such, this Court need not reach Debtor's and Creditors' cross appeals of the bankruptcy court's Order Determining Amount of Allowed Indemnification Claim of Gustavo A. Gomez Lopez.