*614 HINKLE, District Judge,
concurring in part:
This is an appeal from a nearly $3 million judgment on a jury verdict for the plaintiff sign company against the defendant county. The plaintiff says the defendant unconstitutionally denied the plaintiff’s 2003'applications to erect 32 specific signs. The case is 11 years old and counting.
The defendant raises substantial issues. The majority addresses only one of them. The majority concludes it must take this approach because the issue it addresses is one of standing. I believe the issue is not standing and that we should address the other issues properly before us — that we should move this case as far as possible toward a too-long-delayed resolution.
To illustrate that the issue is not standing, I start with this indented statement of the ease:
The plaintiff asserts that on a specific occasion in the past, the defendant — a political subdivision of the state — made a decision that violated the plaintiffs First Amendment rights. The plaintiff sued the defendant, seeking a damages award and injunctive relief. The defendant denied that it violated the First Amendment. Alternatively, the defendant asserted that, even if it did violate the First Amendment, the plaintiff was not entitled to relief, because the defendant would have made the same decision anyway, for legitimate, unrelated reasons. The plaintiff denied that the defendant would have made the same decision anyway.
The indented statement is a scrupulously accurate description of this case. It is also a scrupulously accurate description of Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).
Mt. Healthy is the landmark Supreme Court decision that governs cases just like this one: cases in which a defendant is accused of a past constitutional violation and asserts, as one of its defenses, that it would have made the same decision anyway. When there is a genuine factual dispute about this, it is an issue for trial, typically before a jury. The burden is on the plaintiff to prove the constitutional violation, but the burden is on the defendant to prove the same-decision defense. If the defendant wins on this issue — the jury finds that the defendant would have made the same decision anyway — the court properly enters a judgment for the defendant on the merits. The court does not dismiss the case for lack of standing.
The circuit’s pattern jury instructions include a Mt. Healthy instruction. Hundreds of cases have been tried in this circuit under Mt. Healthy, always treating the same-decision defense as a merits issue. The circuit has repeatedly applied Mt. Healthy as a merits case.
A cursory search turns up the following examples, all First Amendment cases involving the same general pattern as Mt. Healthy and the case at bar: the plaintiff claimed that the defendant took action that violated the plaintiff’s First Amendment rights, the defendant denied it, and alternatively the defendant asserted it would have made the same decision anyway, even in the absence of the First Amendment violation.
In Stanley v. City of Dalton, Georgia, 219 F.3d 1280 (11th Cir.2000), the district court granted summary judgment for the *615 defendant. The Eleventh Circuit held there were disputed issues of fact on the merits — specifically including the same-decision defense — that precluded summary judgment. But the court held the defendant had qualified immunity. So the Eleventh Circuit affirmed the judgment for the defendant on the merits, without deciding whether the defendant would have made the same decision anyway. The Eleventh Circuit did not send the case back for an evidentiary hearing on standing, as would have been required under the majority’s analysis here.
In Smith v. Mosley, 532 F.3d 1270 (11th Cir.2008), the court upheld a summary judgment on the merits for the defendant, on the ground that no reasonable jury could have found that the defendant would not have made the same decision anyway. The court did not question the district court’s standing to enter the judgment on the merits.
In Allen v. Autauga County Board of Education, 685 F.2d 1302 (11th Cir.1982), the court upheld a judgment for the plaintiffs on the ground that the district court’s findings of fact after a bench trial properly resolved the same-decision issue in the plaintiffs’ favor. The court did not say this was a standing issue or should have been addressed other than as part of the trial on the merits.
In Paschal v. Florida Public Employees Relations Commission, 666 F.2d 1381 (11th Cir.1982), the jury held that the protected speech was not a motivating factor in the challenged decision, thus resolving the claim for the defendant without reaching the disputed same-decision issue. The Eleventh Circuit upheld the resulting judgment for the defendant on the merits. The court did not send the case back for resolution of the same-decision issue, as would have been proper if the issue was standing.
Many more cases like this could be cited. The bottom line is this: in our case the majority is correct that the defendant should have' been allowed to present its same-decision evidence. But properly analyzed, this is a merits issue.
In taking a different approach — in treating the same-decision issue as standing— the majority relies on two recent Eleventh Circuit decisions that are different from our case. They are different because in each there was no real dispute about whether the defendant would have made the same decision anyway. In KH Outdoor, L.L.C. v. Clay County, Fla., 482 F.3d 1299 (11th Cir.2007), the “uncontroverted evidence” showed that the plaintiff sign company’s proposed signs failed to comply with the Florida Building Code and Florida statutes that the plaintiff did not challenge. 482 F.3d at 1304. In Maverick Media Group, Inc. v. Hillsborough County, 528 F.3d 817 (11th Cir.2008), the sign company applied to erect signs that “clearly” were impermissible under other, unchallenged provisions. 528 F.3d at 821.
When it is clear■ that the defendant would have made the same decision anyway, it is of course clear that the plaintiff will be unable to obtain redress. And so it is not surprising that a court could view this as lack of standing. But when there is a genuine dispute about this — when, as the majority suggests here, the district court may need to conduct an evidentiary hearing — then the issue is not standing, but the merits. The genuine dispute is a case or controversy, and the plaintiffs stake in that dispute provides standing. The ability to award damages or injunctive relief if the plaintiff wins establishes redressability. And the appropriate evidentiary hearing is a jury trial. To hold otherwise violates the Seventh Amendment.
*616 To be sure, KH v. Clay County and Maverick did not explicitly say this was a standing issue only because it was clear that the defendant would have made the same decision anyway. Somehow courts have treated sign cases differently, perhaps because in the past sign cases often involved only injunctive relief, or perhaps because other statutes or ordinances often clearly prohibit the signs, with no need for an evidentiary hearing to confirm that result. Indeed, KH v. Clay County relied on Harp Advertising Illinois, Inc. v. Village of Chicago Ridge, Ill., 9 F.3d 1290 (7th Cir.1993), a case in which a sign company sought only injunctive relief and in which other, unchallenged provisions plainly would have prohibited the signs at issue. Harp Advertising in turn relied on Renne v. Geary, 501 U.S. 312, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991), again a case seeking only prospective relief, and a case in which the Court said the requested relief would make no practical difference. The requested relief in the case at bar, in contrast, would make a practical difference: the plaintiff would get a lot of money.
Standing principles are, or at least should be, the same in sign cases as in other cases. We should not allow sign cases that are different — because the validity of the same-decision defense is clear at the outset — to dictate the result in sign cases like this one in which there is a disputed same-decision defense. But if this view is rejected — if KH v. Clay County and Maverick are read as applying to sign cases in which there is a genuine dispute over the same-decision defense— then KH v. Clay County and Maverick cannot be squared with the many earlier same-decision cases, including Mt. Healthy, Stanley, the many cases cited in Stanley, and the other cases cited above.
We of course must follow a prior panel. But when prior panel decisions are in irreconcilable conflict, the controlling decision is the oldest, not the most recent. As between the many older cases treating the same-decision defense as a merits issue, and the two more recent sign-ordinance cases treating this as a standing issue, our obligation is to follow the older cases. See, e.g., Walker v. Mortham, 158 F.3d 1177, 1188-89 (11th Cir.1998). And here, following the older cases has the added advantage that they are doctrinally sound and agree with the law as set out by the Supreme Court.
Three more points should be mentioned on this issue.
First, it may seem odd that the same-decision defense in this case could turn on a genuine factual dispute. The defendant claims that its “overlay” restrictions would have prohibited the plaintiff from erecting at least some of the signs at issue, even if the challenged sign ordinance had not existed. One might think this could be resolved simply be consulting the overlay restrictions and examining the plaintiffs applications to erect the signs. But it apparently is not that easy. Even determining which overlay restrictions were actually in effect apparently has proven difficult. And there of course could be disputes about the precise location or other attributes of a proposed sign or about how county officials actually applied the overlay restrictions. So while the same-decision defense here may implicate legal issues, it also implicates factual issues that should have been resolved only by summary judgment or trial.
Second, the majority cites proffered testimony that 30 of the plaintiffs 32 proposed signs violated the overlay restrictions and that 11 would have been denied by the Georgia Department of Transportation. But if even 1 proposed sign would have survived overlay and state review, the same-decision defense fails for that *617 sign, and so, even on the majority’s view of standing law, the plaintiff has standing. The likelihood is high that what the majority labels a standing issue will not end the case. If that is so, then sooner or later a decision will be needed on the other issues now before us.
Third, when one gets mired in doctrinal intricacies, it sometimes helps to take a step back, to consider the bigger picture. This is a case in which the plaintiff claims that the defendant violated the plaintiffs own constitutional rights. The plaintiff says the violation caused millions of dollars in actual damage to the plaintiff. A jury agreed. The plaintiff is the party claiming the millions and holding a judgment; if the plaintiff wins, it gets the money. The plaintiff may or may not be correct on the merits. But it is odd to say the plaintiff lacks standing.
In any event, the case is going back to the district court. If, as seems possible, the district court decides that the overlay restrictions or state law would not have precluded the plaintiff from erecting these signs, the defendant’s other challenges to the verdict will again be front and center. I would decide those issues now.
I would sustain the defendant’s position in at least two respects.
First, the plaintiff sought damages from 2008 forward, even for a period after some of the sign locations became part of new or expanding municipalities, ending the defendant county’s control over signs in those locations. The defendant asserted the plaintiff failed to mitigate its damages by applying to the municipalities; a successful application would have cut off damages going forward. The court barred the defendant from presenting evidence on this. At oral argument before us, the plaintiff said everybody knows the municipalities would not have permitted the signs. But the defendant should not have been foreclosed from pursuing its mitigation defense based on what everybody supposedly knows.
Second, the plaintiff presented damages experts who testified to the lost cash flow a typical sign company would suffer from the loss of these locations. But the recoverable element of damages is lost profits, not lost cash flow. And that is so even if, as these experts testified, companies decide whether to erect signs based on projected cash flow. Moreover, the issue is not what a typical company would have lost, but what this plaintiff lost. None of this necessarily means these experts should have been excluded. But it does mean that, to get the testimony in and lost profits to the jury, the plaintiff was obligated to fill in the gaps.
That the jury did not fully accept the experts’ testimony does not render this error harmless. It is true that the jury awarded only “general” damages, not lost profits, but if not based on lost profits, it is not clear what the general damages could properly have consisted of. And even though the jury awarded only a fraction of the lost cash flow calculated by the experts, the experts’ testimony might well have affected the verdict.
For these reasons, I would vacate the judgment and remand the case for a new trial.